MERLE HOLLINGSWORTH, *Appellee,* v. THE WESTERN UNION TELEGRAPH COMPANY, *Appellant.*

No. 16,528.

SYLLABUS BY THE COURT.

DAMAGES—*Exemplary—Amount of Award—Negligent Delivery of a Telegram.* In an action for damages for the failure to deliver a death message, *held,* that the evidence shows such wanton and reckless disregard of the rights of the plaintiff as to warrant exemplary damages, and that the sum of $700 allowed by the jury is not excessive.

Appeal from Shawnee district court; ALSTON W. DANA, judge. Opinion filed May 7, 1910. Affirmed.

*George H. Fearons, Charles Blood Smith,* and *Samuel Barnum,* for the appellant.

*J. B. Larimer,* and *Charles F. Spencer,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff sued for damages occasioned by the failure of the defendant to deliver a telegram informing her of the dangerous illness of her father. The telegram was sent from Carthage, Mo.,

Hollingsworth v. Telegraph Co. ·

March 7, 1908, at 9:30 P. M.   It was addressed to the
plaintiff at her residence, No. 626 Tyler avenue, To-
peka, and was received at Topeka at 9:40 P. M.   It
was not delivered until about ten o'clock the next
morning, and the plaintiff failed to reach the bedside
of her father until several hours after his death, which
occurred after midnight, March 8.   If the telegram
had been promptly delivered on the night that it was
sent she could have taken an earlier train and reached
her father's bedside about nine hours before his
death.   On account of not having received an answer
to the first telegram, a second was sent from Carthage
on the morning of the 8th; and the plaintiff repaid
her sister the toll for both, amounting to $1.60.   The
jury awarded her $700 damages.   The defendant
appeals.

We find nothing substantial in any of the claims of
error with respect to the introduction of evidence or
the instructions.   The only real question in the case
is whether the damages are excessive.   The testimony
of the defendant was that the message was sent out
for delivery within ten minutes after it was received,
and that it was taken to the house where the plaintiff
lived.   She and her ·sister occupied only a part of the
house at No. 626 Tyler avenue, and it was admitted
that neither of them was at home at the time and that
they did not return until some time after ten o'clock
that night.   The rules of the company do not provide
for the delivery of messages between midnight and
eight o'clock A. M.   This message was sent out on the
first delivery the next morning, which was Sunday,
and was delivered to the plaintiff about ten o'clock in
the forenoon.

The evidence tending to show that an attempt was
made to deliver the telegram on the night it was re-
ceived consisted of the testimony of the delivery clerk,
who testified that he remembered the message coming

in and knew he sent it out by a boy. The delivery sheet was introduced in evidence, showing that the message was sent out at 9:45 P. M. and returned at 10 P. M. The witness who made the entries on this sheet testified to them. He also testified that this was the only message he sent with the boy on that trip. The messenger, a boy seventeen years old, testified that he took the message and went first to No. 624 Tyler avenue, and was told on inquiry that No. 626 was next door south; that he went there and knocked four or five times, but was unable to raise anyone; that it was a double house; that he then went to the south half of the house and inquired if they could tell him where the party was that lived at No. 626; that he was informed there that the party had not been home for several days; that he made other inquiries, but was unable to deliver the message, and returned it.

On the part of the plaintiff, Mrs. Garrigus testified that she lived in a part of the house at No. 626 Tyler avenue; that she was alone in the house that night; that there was a light in the front room and in the dining room; that no one came to the house inquiring for the plaintiff or left any word or any message for her that evening. The testimony of the plaintiff also shows that the place to which the telegram was addressed is only about five blocks from the telegraph office where it was received; that the plaintiff and her sister had lived at No. 626 Tyler avenue for one and one-half years; that the plaintiff, for about four years prior thereto, had been employed in the millinery business at Paxton & Paxton's store, and was acquainted with all the employees of that firm and with the people living on the east side of the street in her block, and that at the time the telegram was received her name appeared in the city directory, with her occupation given as that of a milliner with Paxton & Paxton, and her address as No. 626 Tyler avenue. It was also

Hollingsworth v. Telegraph Co.

shown in evidence that, it being Saturday night, the store where the plaintiff was employed remained open for business until ten o'clock, at which time the plaintiff left the store and went to her home. The defendant does not claim to have made any effort to deliver the telegram at the place where the plaintiff was employed.

Inasmuch as the jury may have disbelieved the testimony of the defendant tending to show an honest effort to deliver the message on the night it was received, and in view of the fact that no effort was made to deliver it at the plaintiff's business address, which could have been easily ascertained by referring to the city directory, the amount awarded by the jury can not be considered excessive.

The judgment is therefore affirmed.

PORTER, J. (dissenting) : In this case there is an absence of evidence disclosing any such aggravated circumstances or wanton disregard of the rights of the parties as was shown in the case of *Telegraph Co. v. Gilstrap,* 77 Kan. 191, and in *Telegraph Co. v. Lawson,* 66 Kan. 660. The writer is therefore of the opinion that the plaintiff should be required to remit one-half of the judgment. As said by the court in *Telegraph Co. v. Botkin,* 79 Kan. 792:

"The award of exemplary damages should be measured according to the circumstances of aggravation or mitigation, and made reasonable in view of the conduct of the wrong-doer in the particular case. The amount should not be so small as to be trifling, nor so large as to be unjust, but such as candid and dispassionate minds can approve as a punitive example to warn against similar lapses from duty." (Page 796.)